**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANGELA STUCKEY, an adult individual,<br><br>Plaintiff,<br><br>vs.<br><br>ONYX CORPORATION dba ONYX<br>BRANDS, ONYX BRANDS USA and<br>ONYX LABORATORIES, LTD., an<br>Arkansas corporation; WAL-MART<br>STORES, INC., d/b/a/ WALMART, a<br>Delaware corporation,<br><br>Defendants. | )<br>)  Civil Action No.:  3:17-cv-235<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Angela Stuckey, by and through her undersigned counsel, files this Complaint against Defendant Onyx Corporation dba Onyx Brands, Onyx Brands USA and Onyx Laboratories, Ltd. and Defendant Wal-Mart Stores, Inc. (collectively referred to as "Defendants") averring as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Angela Stuckey is an adult individual who resides in Clearfield County, Pennsylvania.

2.      Defendant Onyx Corporation dba Onyx Brands, Onyx Brands USA and Onyx Laboratories, Ltd. ("Onyx") is, upon information and belief, a corporation incorporated in the State of Arkansas with its principal business located in Arkansas and regularly conducts business throughout the United States, including the Western District of Pennsylvania.

3.      At all material times hereto, Onyx was engaged in the business of designing, formulating, manufacturing, distributing, labeling developing, testing, packaging, preparing

and/or selling the defective product known as the Onyx 100% Pure Acetone Maximum Strength Professional Remover through, *inter alia*, Defendant Wal-Mart Stores, Inc. in the Western District of Pennsylvania.

4.     Defendant Wal-Mart Stores, Inc. d/b/a Walmart ("Walmart") is a corporation incorporated in the State of Delaware with its principal business in Bentonville, Arkansas.

5.     Walmart conducts business throughout the United States, including the Western District of Pennsylvania.

6.     Upon information and belief, Walmart has approximately 140 stores in the State of Pennsylvania and more than 50 stores in the Western District of Pennsylvania, including a Walmart Supercenter at 100 Supercenter Dr., Clearfield, PA 16830.

7.      At all times relevant hereto, Walmart was engaged in the business of distributing, marketing and offering for sale and placing in the stream of commerce, *inter alia,*  the product known as Onyx 100% Pure Acetone Maximum Strength Professional Remover, to members of the general public within the Western District of Pennsylvania, including Plaintiff Angela Stuckey.

8.     Jurisdiction pursuant to U.S.C. § 1332 and venue pursuant to U.S.C. § 1391 are appropriate in this Court because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States in that Plaintiff Angela Stuckey is a citizen of the Commonwealth of Pennsylvania, Defendant Onyx is a corporation incorporated in the State of Arkansas with its principal business located in Arkansas and Defendant Walmart is a corporation incorporated in the State of Delaware with its principal business in Arkansas.

9.      The Western District of Pennsylvania is a judicial district in which a defendant is subject to the court's personal jurisdiction with respect to the civil action in question; Plaintiff Angela Stuckey is a resident of Clearfield County, Pennsylvania; and the events or omissions giving rise to the claims out of which this lawsuit arises occurred in Clearfield County, Pennsylvania.

## GENERAL ALLEGATIONS

10.      Onyx designed, formulated, manufactured, distributed and labeled Onyx 100% Pure Acetone Maximum Strength Professional Remover (the "Product") and sold it to Walmart.

11.      According to Onyx's website, the Product is the "#1 Selling Polish Remover Brand on the Market" and is a "Best Seller" of the company.

12.      Walmart sold the Product from its store located at 100 Supercenter Dr., Clearfield, Pennsylvania 16830 and placed the Product into the stream of commerce.

13.      Plaintiff purchased the Product from Walmart's Clearfield, Pennsylvania.

14.      The Product contains 100% acetone.

15.      Acetone is an organic compound with the formula $(CH_3)_2CO$.

16.      Acetone is a colorless, volatile, flammable liquid, and is the simplest ketone. Acetone has an extremely low flash point.  Acetone's vapors can flow along surfaces to distant ignition sources and flash back.

17.      Onyx knew that the Product has a low flash point and that the vapors can cause a flash fire.  On the Material Safety Data Sheet ("MSDS") that Onyx has prepared, which was never provided to Angela Stuckey, it states:

> HIGHLY FLAMMABLE:  Will be easily ignited by heat, sparks or flames.
> . . .
> CAUTION:  All these products have a very low flash point.

. . .
Vapors may form explosive mixtures with air.  Vapors may travel to
source of ignition and flash back.  Most vapors are heavier than air.  They
will spread along ground and collect in low or confined areas (sewers,
basements, tanks).  Vapor explosion hazard indoors, outdoors or in sewers.

The warnings contained on the MSDS are not present on the labeling or packaging of the Product

that Angela Stuckey used.

18.     On the front of the Product it states only as follows:

PROFESSIONAL remover
100% PURE ACETONE
MAXIMUM STRENGTH
EASILY REMOVES: ARTIFICIAL NAILS, GLITTER POLISH, NAIL

POLISH, GEL POLISH, NAIL GLUE AND MORE

19.     At no place on the front of the Product that Angela Stuckey purchased was there

any warning that the Product was dangerous or extremely flammable.

20.     The instructions printed in very small print on the back of the Product bottle state

only as follows:

**READ INSTRUCTIONS CAREFULLY BEFORE USING.**
**INSTRUCTIONS:  TO REMOVE ARTIFICIAL NAILS:**  Clip excess
artificial nails with nail clipper.  Fill glass bowl with acetone.  Place fingers
in bowl and allow to soak for 15 minutes.  Repeat if necessary.  **TO
REMOVE GEL POLISH:**  Fill glass bowl with acetone.  Place fingers in
bowl and allow to soak for 15 minutes.  Repeat if necessary.  Trouble areas
may require use of sanding block and/or manicure sticks to remove polish.
Repeat if necessary.
**TO REMOVE NAIL POLISH, GLITTER, NAIL ART OR GLUE:**
Moisten cotton ball and massage nail bed, pressing firmly from cuticle to nail
tip.  Wipe clean and repeat if necessary.

**WARNING:  KEEP AWAY FROM CHILDREN**. **Danger!  Flammable.**
Keep away from heat, sparks and flame.  Do not use while smoking.  Store at
room temperature.  Do not breathe in vapors.  Use only with adequate
ventilation.  Harmful if taken internally.  If ingested, seek medical attention
immediately and contact a local poison control center.  In case of eye contact,
immediately flush eyes with running water for at least 15 minutes and seek
medical attention.  Avoid prolonged exposure to skin.  Harmful to synthetic

fabrics, wood finishes and plastics.  Product will melt styrofoam.  NOTE: Acetone may cause sensitive skin to become dry.
**DISCLAIMER**:  Do not pour into plastic or styrofoam container.
**INGREDIENTS**:  Acetone, Denatoniam Benzonate.

21.     The warning on the back of the Product is completely and totally inadequate and facially defective.  The warning does not indicate whatsoever the extreme nature of the airborne acetone vapors, nor does it warn that a) acetone vapors may form explosive mixtures with air; b) acetone vapors may travel to source of ignition and flash back; c) acetone vapors are heavier than air and will spread along ground and collect in low or confined areas; or d) that the product is "extremely" flammable.

22.     The warning fails to provide sufficient warning as to what is sufficient ventilation when using the Product and the warning as to ventilation was written so as to appear to apply only due to the harm if vapors are inhaled, rather than to ensure that vapors do not spread and cause a flash fire.

23.     The Product label never advises Angela Stuckey to re-close the cap on the bottle and the bottle and cap design does not have any feature to keep any vapors inside the bottle unless capped closed.

24.     The warnings on the Product do not appear on the label prominently and conspicuously as compared to other words, statements, designs, or devices and is not in bold type on contrasting background to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

25.     The label of the Product did not bear a warning statement appropriate to prevent a health hazard that may be associated with the product.

26.     Similar products, including those sold at Walmart, include warnings that "Vapors may ignite."

27.     Onyx markets the Product as a "professional" product, but is sold to consumers who have no knowledge that the vapors of this product can flow along surfaces to distant ignition sources and flash back causing a fire.

28.     On or about May 29, 2016, Angela Stuckey used the Product for its intended purpose, to remove nail polish from both her toe and finger nails.

29.     Angela Stuckey used the Product in a manner consistent with the inadequate warnings.

30.     While Angela Stuckey was using the Product, the vapor of the acetone traveled to an ignition source and caused a flash fire which engulfed Angela Stuckey's hair, upper body and face.

31.     Angela Stuckey sustained approximately 10% total body surface area flash flame burns to her face, chest and bilateral upper extremities, including burning off a portion of her ear.

32.     Angela Stuckey has had multiple surgeries due to the negligence of Defendants and continues to have severe and permanent scarring.

33.     Angela Stuckey has incurred substantial medical bills due to the negligence of Defendants.

34.     Angela Stuckey has suffered loss of wages due to the negligence of Defendants.

35.     Angela Stuckey has suffered severe pain and suffering due to the negligence of Defendants.

36.     As a direct and proximate result of Defendants placing the Product into the stream of commerce without adequate warnings, Angela Stuckey has suffered and continues to suffer both injuries and damages including, but not limited to:   past, present and future medical,

hospital, monitoring, rehabilitative and pharmaceutical expenses, pain and suffering, and lost income.

## COUNT I – STRICT LIABILITY DEFECTIVE DESIGN AND FAILURE TO WARN

37.     Angela Stuckey incorporates the preceding paragraphs as if the same were set forth at length herein.

38.     At all times material hereto, Defendants engaged in the business of designing, formulating, developing, manufacturing, preparing, distributing, testing, packaging, marketing, labeling retailing, supplying and/or selling the Product, sold under the name Onyx 100% Pure Acetone Maximum Strength Professional Remover, and through that conduct has placed the Product into the stream of commerce in the Commonwealth of Pennsylvania and in the Western District of Pennsylvania.

39.     The Product that Defendants designed, formulated, manufactured, distributed, tested, packaged, marketed, labeled and/or sold reached users and/or consumers such as Angela Stuckey without any material change in its condition or design.

40.     Angela Stuckey was an intended user/consumer of the Product and relied upon the safety of Defendants' product.

41.     Defendants expected that the Product would reach its users and consumers without any material change in its condition or design.

42.     Defendants failed to warn the public, including Angela Stuckey, of the risk of suffering the type and manner of injuries suffered by Angela Stuckey, which risks and/or dangers were known or should have been known to Defendants.

43.     Defendants expected the Product to reach, and it did in fact reach, consumers in the Commonwealth of Pennsylvania and in the Western District of Pennsylvania, including Angela Stuckey, without substantial change in the condition.

44.     The Product as designed, formulated, manufactured, distributed, packaged, marketed, tested, labeled and/or sold was unreasonably dangerous and/or hazardous in design, as Defendants failed to properly eliminate the avoidable dangers of acetone vapors igniting a flash fire.

45.     At all times relevant herein, the  Product (and the sales and promotional materials) designed, formulated, manufactured, distributed, packaged, marketed, tested, labeled and/or sold by Defendants was defective and unreasonably dangerous for the ordinary and intended use of the product including one or more of the following aspects:

a.      designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the Product, which is defective and unreasonably dangerous;

b.      designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the Product, which is in a defective condition and unreasonably dangerous;

c.      in failing to design, manufacture, formulate, distribute, market, label and/or sell the Product to eliminate the avoidable danger of a flash vapor fire in accordance with legal and/or statutory duties;

d.      designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the Product which contained the defective, dangerous and hazardous propensity of a flash vapor fire;

e.      failing to offer consumers, such as Angela Stuckey, a less-hazardously designed and/or formulated product that would perform comparably to the actual product sold without its inherent dangers (including its propensity to cause a flash vapor fire);

f.      failing to adequately warn Angela Stuckey and other consumers or users of the Product that the products and byproducts thereof were susceptible to cause a flash vapor fire;

g.      failing to provide Angela Stuckey and other consumers or users of the Product with adequate information, instructions or warnings concerning the safe use of the product; and

h.      failing to provide Angela Stuckey and other consumers or users of the Product with adequate and conspicuous warnings to alert consumers and users, including Angela Stuckey, of the flammable danger associated with its use and the adverse effects and risks thereto.

46.     The design, formulation, manufacturing, distributing, testing, packaging, marketing, labeling, and/or sale of the Product with the aforementioned defects and/or inadequacies in warnings, made the Product unreasonably dangerous for its intended use.

47.     At all times material hereto, the Product was designed, formulated, manufactured, distributed, packaged, marketed, tested, labeled and/or sold by Defendants to be used for the purpose and in the manner intended and/or expected by Defendants.

48.     Defendants knew and intended that the Product would be purchased from Walmart by members of the general public and would be used by such purchasers without any inspection for defects, and such purchasers would rely upon the representations made by Defendants on the product label, in other promotional and sales materials, and otherwise.

49.     At the time of its manufacture and sale, the Product was unsafe and defective to consumers using said product for its advertised purposes and in a reasonably foreseeable manner, in that it posed an unreasonably high risk of serious injury to consumers, which information was concealed by Defendants.

50.     Prior to the manufacture, sale and distribution of the Product to Angela Stuckey, Defendants knew, or were reckless in not knowing, that the Product was in a defective condition and that those who used the product were at an unreasonable risk of experiencing injury.

51.     Further, Defendants, through their officers, directors, and managing agents, had notice and knowledge from several sources, prior to the date of the marketing and sale of the

Product to Angela Stuckey, that the product presented a substantial and unreasonable risk of harm to the consumer, including Angela Stuckey, and as such, said consumers were unreasonably subjected to risk of injury from the use of that product.

52.     Angela Stuckey used the Product for its intended purpose and in a manner consistent with the inadequate warnings.

53.     Angela Stuckey could not have discovered any defect in the Product or accompanying sales and promotional materials through the exercise of due care.

54.     Defendants, as manufacturer, marketer, retailer, distributor and seller of the Product and similar products, are held to the level of knowledge of an expert in the field.

55.     Defendants, as seller of the Product, are liable for the products they sell to their consumers.

56.     Angela Stuckey did not have substantially the same knowledge as Defendants and an adequate warning from Defendants should have been communicated to her.

57.     Had the Product not been designed defectively and/or had adequate warnings been provided, Angela Stuckey's injuries would not have occurred.

58.     As a direct and proximate result of the defective and unreasonably dangerous condition of the Product, including the Defendants' failure to adequately or properly warn or caution Angela Stuckey, Angela Stuckey sustained the injuries and damages as herein alleged for which the Defendants are liable.

WHEREFORE, Plaintiff respectfully requests that this honorable Court enter judgment in her favor and against Defendants for an amount in excess of the jurisdictional limit, interest, costs, and any other such relief that this Court deems just and equitable.

## COUNT II – NEGLIGENCE

59.     Angela Stuckey incorporates the preceding paragraphs as if the same were set forth at length herein.

60.     Defendants had a duty to exercise reasonable care in the design, formulation, manufacture, distribution, testing, warning, labeling, packaging and instruction and/or sale of the Product, including a duty to ensure that the product did not expose users or consumers, such as Angela Stuckey, to an unreasonable risk of harm and/or danger and that any unreasonable hazard and/or danger associated with the product was properly and adequately warned against.

61.     Defendants owed Angela Stuckey and other users or consumers of the Product a duty to provide adequate warnings and/or instruction concerning the use and extreme flammability of the Product during its ordinary and intended use.

62.     Defendants were under a duty to distribute safe products to their consumers.

63.     Defendants breached this duty, by, among other things:

        a.      designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the Product, which is unreasonably dangerous and/or hazardous;

        b.      designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the Product and failing to eliminate the avoidable danger of a flash vapor fire;

        c.      failing to conform its conduct in designing, manufacturing, formulating, marketing, labeling and/or selling the Product when it knew or should have known, that its product contained the dangerous and hazardous propensity of causing a flash vapor fire;

        d.      failing to offer consumers, such as Angela Stuckey, a less-hazardously designed and/or formulated Product that would perform comparably to the actual product sold without its inherent dangers (including its propensity to cause a flash vapor fire);

11

e.      failing to adequately warn Angela Stuckey and other consumers or users of the Product that the byproducts thereof were susceptible to cause a flash vapor fire;

f.      failing to provide Angela Stuckey and other consumers or users of the Product with adequate information, instructions or warnings concerning the safe use of the product;

g.      failing to provide Angela Stuckey and other consumers or users of the Product with adequate and conspicuous warnings to alert consumers and users, including Angela Stuckey, of the flammable danger associated with its use and the adverse effects and risks thereto;

h.      failing to comply with all applicable codes, standards, regulations or specifications established, adopted, promulgated, or approved by the United States, State of Pennsylvania, or by an agency of the United States;

i.      placing an unsafe product into the stream of commerce; and

j.      distributing the Product either directly or indirectly, to members of the general public within the Commonwealth of Pennsylvania and the Western District of Pennsylvania, including Angela Stuckey.

64.     Had the Product not been designed defectively and/or had adequate warnings been provided, Angela Stuckey's injuries would not have occurred.

65.     As a direct and proximate result of the negligence of Defendants, Angela Stuckey sustained the injuries and damages as herein alleged for which the Defendants are liable.

WHEREFORE, Plaintiff respectfully requests that this honorable Court enter judgment in her favor and against Defendants for an amount in excess of the jurisdictional limit, interest, costs, and any other such relief that this Court deems just and equitable.

## <u>COUNT III – BREACH OF WARRANTIES</u>

66.     Angela Stuckey incorporates the preceding paragraphs as if the same were set forth at length herein.

67.     At the time Defendants designed, manufactured, formulated, marketed, distributed, labeled and/or sold the Product, Defendants knew of the use for which the product

was intended, and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

68.     Contrary to such implied warranties, the Product was not of merchantable quality and fit and safe for its intended use because it was defective in design and Defendants failed to properly warn users or consumers that the product and vapors was susceptible to igniting into a flash flame and Defendants failed to provide proper and adequate warnings concerning the extreme flammability of the product.

69.     At the time of the design, manufacture, formulation, marketing, distributing, packaging, labeling and/or selling the Product, Defendants had reason to know the particular purpose to which the product would be used, and knew that its skill and judgment was being relied upon to furnish a suitable product; thus, Defendants breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code (hereinafter "UCC") 13 Pa. Cons. Stat. §2315 in that the product was not fit for the particular purpose for which such products are sold and used.

70.     In addition, Defendants breached the implied warranty of merchantability as set out in 13 Pa. Cons. Stat. §2314(c) in that the product was not fit for the ordinary uses for which the product was used.

71.     Angela Stuckey's damages occurred as a direct and proximate result of Defendants' breaches of its implied warranties of fitness for a particular purpose and merchantability.

72.     As a natural and foreseeable consequence of these breaches, the Product's vapors ignited and a flash fire was caused to occur, which resulted in Angela Stuckey's injuries and damages.

73.    Had the Product not been designed defectively and/or had adequate warnings been provided, Angela Stuckey's injuries would not have occurred.

74.    As a direct and proximate result of the aforementioned breaches, Angela Stuckey sustained the damages described herein in an amount in excess of $75,000.

WHEREFORE, Plaintiff respectfully requests that this honorable Court enter judgment in her favor and against Defendants for an amount in excess of the jurisdictional limit, interest, costs, and any other such relief that this Court deems just and equitable.

<u>**JURY DEMAND**</u>

Plaintiff demands a trial by jury for all issues so triable.

Respectfully Submitted,

Dated: December 18, 2017

2673413v1

By:    */s/ Kelly K. Iverson*
       Jeffrey P. Ward
       jward@cohenlaw.com
       Pa. ID No. 34317
       Kelly K. Iverson
       kiverson@cohenlaw.com
       Pa. ID No. 307175

       **COHEN & GRIGSBY, P.C.**
       625 Liberty Avenue
       Pittsburgh, PA 15222
       (p) (412) 297-4838

       Joel L. Herz
       Pro Hac Vice Application to be submitted
       joel@joelherz.com

       **LAW OFFICES OF JOEL L. HERZ**
       La Paloma Corporate Center
       3573 E. Sunrise Dr., Suite 215
       Tucson, Arizona  85718-3206
       (520) 529-8080

       Attorneys for Plaintiff Angela Stuckey